IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-03588-PAB-TPO

LACIE NELSON,

     Plaintiff,

v.

MOSES STANCIL, in his official capacity as Executive
Director of the Colorado Department of Corrections;
RYAN LONG, in his official capacity as Warden of
the Denver Women's Correctional Facility; and
AMANDA RETTING, in her official capacity as Sex
Offender Treatment and Monitoring Program
Administrator and Colorado Department of Corrections
Representative on the Sex Offender Management Board,

     Defendants.

---

**DEFENDANT RETTING'S REPLY IN SUPPORT OF
PARTIAL MOTION TO DISMISS COMPLAINT (ECF NO. 22)**

---

Defendant Amanda Retting, in her role as a member of the Sex Offender Management

Board (SOMB), through the Colorado Attorney General, respectfully submits this Reply in

Support of her Partial Motion to Dismiss Complaint. (ECF No. 22).

### INTRODUCTION

In this case, Plaintiff Lacie Nelson contends that the policies that govern CDOC's Sex

Offender Treatment and Monitoring Program (SOTMP) violate RLUIPA. (ECF No. 1 at ¶¶ 176-

191). In particular, she challenges an SOTMP policy that requires inmates to admit to sexually

abusive conduct before entering treatment. She sued Defendants Stancil, Long, and Retting as

CDOC's Executive Director, the Warden of Denver Women's Correctional Facility, and the

SOTMP Administrator, respectively. (*Id.* at ¶¶ 177-185). She also sued Retting as a member of

the Sex Offender Management Board (SOMB). (*Id.* at ¶ 181).

However, the Complaint did not support this Court's subject matter jurisdiction over

Retting in her SOMB role. Accordingly, she filed a Partial Motion to Dismiss (the Motion),

asserting that forcing her to defend a suit in her SOMB role violates the Eleventh Amendment's

guarantee of sovereign immunity. (ECF No. 22 at 3-5). She also argued that the exception to

immunity carved out in *Ex Parte Young*, 209 U.S. 123 (1908), does not apply because the SOMB

is immune, it does not enforce SOTMP policy, and Retting alone cannot act for the SOMB. (*Id.*).

In her Response, Nelson argued that she cannot get complete relief unless Retting is sued

in her SOMB role. (*Id.* at 3-14). Nelson also attached discovery materials. However, she fails to

take account of the different roles of the SOMB and CDOC under Colorado law. Given those

roles, this Court lacks subject matter jurisdiction over Retting as a SOMB member.

## ARGUMENT

A.    **Whether the Motion constitutes a facial attack or a factual attack, this Court lacks
      subject matter jurisdiction over Retting as a SOMB member.**

In the Response, Nelson notes that a party may mount a facial or a factual attack on

subject matter jurisdiction. (ECF No. 35 at 4). A facial attack rests on the allegations in the

complaint, while a factual attack relies on other evidence. *Holt v. United States*, 46 F.3d 1000,

1003 (10th Cir. 1995) (subsequent history omitted). Here, both kinds of attacks are at issue.

(ECF No. 35-1 to 35-3). However, no matter what kind of challenge is raised, the burden is on

Nelson because she is the party asserting there is subject matter jurisdiction. *Port City Props. v.

Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008). She has not met that burden.

**B.  Nelson may obtain relief for the alleged violation by suing the CDOC Defendants.**

The Eleventh Amendment prohibits private citizens from bringing suits against states in federal court absent a waiver of sovereign immunity. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). It is meant to preserve the sovereignty of the states by acknowledging that they cannot be sued without consent. *Hennessey v. Univ. Kansas Hosp. Auth.*, 53 F.4th 516, 528 (10th Cir. 2022). However, *Ex Parte Young*, 209 U.S. at 158-59, identifies an exception. *Will v. Michigan. Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989). Under *Ex Parte Young*, litigants may sue only state officers who have 'some connection [to] the enforcement of [an] act' that is in continued violation of federal law," *Finstuen v. Crutcher*, 496 F.3d 1139, 1151 (10th Cir. 2007) (citation omitted). And *Ex Parte Young* allows only for prospective relief. *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1214 (10th Cir. 2022). It is limited in this way because it rests on a fiction that state officials who violate the Constitution may be "stripped" of their official status to vindicate federal interests, which take precedence over state interests. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104-06 (1984).

Here, Retting, Long, and Stancil *are* proper *Ex Parte Young* defendants. They are responsible for enforcing SOTMP policies in Denver Women's Correctional Facility, where Nelson is housed. (ECF No. 35-1 at 5, *Response to Interrogatory 6*, stating, "the SOMB has no duties or responsibilities to implement the SOTMP. Implementation of the SOTMP. . . is the sole responsibility of CDOC, because the SOTMP is a CDOC program."). Their decision to enforce SOTMP policy on Nelson is the conduct that allegedly violates RLUIPA; they have answered the Complaint; and in those capacities, they will defend this suit on its merits. (ECF No. 21).

3

**C. Nelson cannot sue the SOMB, or its members, under the *Ex Parte Young* exception**.

Not content with this remedy, Nelson asserts that "[w]ithout a representative of the

SOMB named as a defendant in this case, the CDOC Defendants may assert they have no power

to grant the relief sought." (ECF No. 35 at 3). Thus, she appears to contend that if this Court

ordered the CDOC Defendants not to enforce the challenged SOTMP policy, they would defy

that order, citing the SOMB Standards and Guidelines. Then the SOMB would ignore the plight

of its certified therapists, and would not amend any part of its Standards and Guidelines in light

of new judicial guidance on RLUIPA. Pursuant to this far-fetched scenario, she asks this Court to

order the SOMB to proactively promulgate standards and guidelines that serve her goals, an act

that unnecessarily infringes on the General Assembly's policy-making functions as delegated to

the SOMB. This request goes far beyond *Ex Parte Young*'s intended scope.

**D. Nelson cannot sue Retting alone to obtain relief from the SOMB.**

Here, Nelson does not appear to dispute that the SOMB itself is immune from suit under

the Eleventh Amendment. *Bertrand v. Kopcow*, 199 F. Supp. 3d 1278, 1285 (D. Colo. 2016)

(holding that the plaintiff was barred by the Eleventh Amendment from obtaining an order that

the SOMB must repeal its Standards and Guidelines). However, even if it were not immune,

Nelson cannot sue Retting alone to obtain relief from the SOMB.

Under Colorado law, the SOMB is only empowered to act as a body corporate; its

members cannot act on its behalf. § 16-11.7-103(4), C.R.S. In fact, it has twenty-five members,

all of whom represent stakeholders with varying perspectives on sex-offender treatment.

§ 16-11.7-103. They include not only CDOC, but also members of the Judicial Branch, the

Department of Human Services, the Community Corrections Board, law enforcement, mental

health experts, a private criminal defense attorney, a polygraph examiner, a county director of

human or social services, county commissioners, and a representative of the Department of

Education. § 16-11.7-103(1)(a)-(f). In short, the SOMB is an amalgam of people with different

kinds of expertise, and their diverse expertise is meant to guide the SOMB as a policy-making

body. Tellingly, SOMB members are meant to be "immune from any liability, whether civil or

criminal, for the good faith performance" of their duties. § 16-11.7-103(5).

In her Response, Nelson insists that Retting's inability to act for the SOMB as a body is

"immaterial," hoping to dictate SOMB policy by isolating Retting and forcing her to defend this

suit alone. (ECF No. 35 at 8). The Tenth Circuit has expressly disagreed with that proposition. In

*Barrett v. Univ. of New Mexico Bd. of Regents*, 562 F. App'x 692 (10th Cir. 2014), it squarely

addressed whether a plaintiff may proceed against individual members of a board empowered to

act only as a body corporate. *Id.* at 694. It noted that, even assuming a plaintiff could show that

the board itself was engaged in an ongoing violation of federal law, claims against its individual

members were improper because they have no "duty to enforce the statute in question and a

demonstrated willingness to do so." *Id.* In other words, the Tenth Circuit has addressed this

precise question, and it has firmly and explicitly rejected Nelson's position.

Attempting to distinguish *Barrett*, Nelson asserts that it "misconstrued" the *Ex Parte

Young* enforcement requirement because, when it addressed whether board members had a duty

to enforce a particular law, it referenced the federal law from which the plaintiff's cause of

action arose — the Americans with Disabilities Act (ADA) — instead of the "law or [state]

regulation causing the violation of federal law." (ECF No. 35 at 9). This argument is unavailing.

*Barrett*'s analysis did not turn on which law the state officers were alleged to have violated.

Rather, the Tenth Circuit analyzed the defendants' argument that individual members of a board could not be sued when they could not act alone. *Id.* It found the argument persuasive. *Id.* Moreover, the *Barrett* Court considered a set of circumstances that closely parallels the circumstances presented here. In *Barrett*, a state board sought to act in a way that allegedly violated a federal statue — the ADA. *Id.* at 694. The plaintiff sought an injunction prohibiting that conduct. *Id.* Here, Nelson asserts that the SOMB acted in a way that violates RLUIPA — a federal statute, and seeks an injunction prohibiting that conduct. *Barrett* is clearly apposite.

Second, Nelson points out that *Barrett* is not binding because no published Tenth Circuit case or published District of Colorado case has relied on it. (ECF No. 35 at 9). But Retting has never maintained that *Barrett* was binding; only that it was persuasive, as evidenced by the eighteen cases that have cited it. These cases include a recent District of Colorado case and multiple cases from other District Courts in the Tenth Circuit and other circuits. *See, e.g.*, *Gorenc v. Klaassen*, 421 F. Supp. 3d 1131, 1149 (D. Kan. 2019) (holding that a single board member's inability to act on her own was dispositive proof the Court lacked subject matter jurisdiction); *McLaughlin v. Bd of Regents*, 566 F. Supp. 3d 1204, 1211 n.2 (W.D. Okla. Oct. 8, 2021); *Bertolo v. Shain*, No. 17-cv-00773-RM-KLM, 2020 WL 2365425 at *5 (D. Colo. Feb. 27, 2020) (noting that a SOMB board member was not authorized to act individually so he retained immunity); *Taylor v. Univ. of Michigan*, No. 17-11473, 2018 WL 1322395 at *6 (E.D. Mich. Feb. 23, 2018) (noting that a board of regents was protected, and so were its individual members, because they were not authorized to act individually). The unpublished status of these cases is of no moment, as even published district court cases are not binding on other parts of this Court. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (citation omitted)

6

Finally, Nelson argues that *Barrett* is not persuasive because it did not address *Prairie Band Potawatomi Nation v. Wagnon*, 476 F. 3d 818, 828 (10th Cir. 2007), which stands for the unremarkable proposition that officials enforce laws when they have "assisted or currently assist" in giving them effect. Given that *Prairie Band* was decided before *Barrett*, the Tenth Circuit was presumably aware of it and chose not to discuss it, likely because there was no reason to do so. *Barrett* analyzed whether it mattered that a particular board was authorized to act only as a group, not the meaning of the word "enforce." *Id.* at 694.

**E.  In any event, the SOMB's conduct does not fall within the *Ex Parte Young* exception.**

**1.  The SOMB has not engaged in ongoing violations of federal law.**

As noted above, *supra* part B, under *Ex Parte Young*, litigants may only sue state officers who act in continued violation of federal law. *Finstuen,* 496 F.3d at 1151. Here, the SOMB's history and purpose demonstrate that it has not acted in continued violation of federal law. In 1992, the General Assembly found it "necessary to create a program that established evidence-based standards for the evaluation, identification, treatment, management, and monitoring of adult sex offenders." § 16-11.7-101, C.R.S. It created the SOMB and gave it duties to, as relevant here, "develop, implement, and revise, as appropriate, guidelines and standards to treat adult sex offenders." § 16-11.7-103(4)(a)-(b). Thus, the SOMB issued *Standards and Guidelines for the Assessment, Evaluation, Treatment, and Behavioral Monitoring of Adult Sex Offenders* (revised in January 2025) (Standards and Guidelines). (ECF No. 35-2). This is a historical fact, not an ongoing enforcement activity.

Squarely addressing this issue, the Supreme Court and other judges in the District of Colorado have held that, by issuing rules in the past, a state agency does not make itself subject

7

to suit. *See Ex Parte Young*, 209 U.S. at 132 (a challenge to new rates could not proceed against

the Railroad Commission because its implementation of new rates was a historical fact); *Bertolo*

*v. Shain*, No. 17-cv-00773-RM-KLM, 2020 WL 2365245, at \*5 (D. Colo. Feb. 27, 2020)

("SOTMP treatment must conform to the standards created by SOMB, but SOMB does not

perform treatment, including enforcing specific treatment contracts."); *Bertrand*, 199 F. Supp. 3d

at 1285 (discussing the SOMB's Standards and Guidelines, and stating that "there appears to be

nothing to enjoin – the promulgation is a historical fact.").

     **2.   The SOMB does not "enforce" SOTMP policy.**

     Further, as noted above**,** *supra* part B, *Ex Parte Young* only permits suits against state

officials who have a connection to the *enforcement* of an act that violates Federal law. *Finstuen,*

496 F.3d at 1151. In her SOMB role, Retting is not authorized to enforce SOTMP policy.

     Retting concedes that, to have authority to enforce a law, a state officer "need not have a

special connection" to it; rather, she must have a "particular duty to enforce" it and a

"demonstrated willingness to exercise that duty." *Chamber of Com. v. Edmonson*, 594 F.3d 742,

760 (10th Cir. 2010). And the *Wagnon* case indeed notes that a state official enforces a law

whenever they have "assisted or currently assist in giving [it] effect." 476 F.3d at 828. But while

a duty to enforce a law may arise from a law or a source other than the law, the law itself may

also authoritatively provide that no such duty exists.

     For example, in *Edmonson*, multiple Chambers of Commerce sued the Oklahoma

Attorney General to prohibit him from enforcing sections of The Oklahoma Taxpayer and

Citizen Protection Act of 2007 (OTCPA), a law meant to regulate illegal immigration via

enhanced employment verification procedures. 594 F.3d at 750-56. Although the *Edmonson*

Court found that the Attorney General had authority to enforce some parts of the OTCPA
(because he could draft state contracts to include language complying with it or bring lawsuits),
the Court also found that he could not enforce other parts of the OTCPA (because, as to those
parts, his powers were expressly limited to housing issues). *Id.* at 757-60. In other words, the
Court honored limiting language in the statute. Here, the Standards and Guidelines themselves
specify that the SOMB "does not have purview over other entities involved in the supervision of
defendants convicted of a sexual offense." *Introduction*, p. 4. Thus, pursuant to its own
guidelines, the SOMB does not have purview over CDOC, and cannot enforce its policies.

Moreover, when a state law explicitly empowers one set of officials to enforce it, and it
does not explicitly empower another set of officials, that contrast matters. *See Petersen v.
Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013) (noting that when a state law explicitly
empowers one set of officials to enforce it, a plaintiff cannot sue a different official absent
additional evidence of enforcement powers). Here, CDOC is the only entity that is expressly
empowered to recommend and administer treatment to inmates, and only its regulations govern
the SOTMP. *Allen v. Clements*, 930 F. Supp. 2d 1252, 1260 (D. Colo. 2013); *Administrative
Regulation* 700-19(IV)(H)(1)-(4); § 16-11.7-105(1)(c), C.R.S. (the General Assembly laid out
specific procedures for amending CDOC's sex-offender treatment standards).

### 3.   Discovery documents do not show that the SOMB enforces SOTMP policy.

Admittedly, as noted in Nelson's discovery responses, the SOMB does regulate SOMB-
certified therapists in narrow ways, but it clearly does not enforce its Standards and Guidelines
against inmates. For example, therapists may request temporary variances from the Standards
and Guidelines; those requests are reviewed by the Application Review Committee (ARC) on

which Retting serves. However, Retting recuses herself from the ARC whenever CDOC policies are at issue due to the obvious conflict of interest. (ECF No. 35 at 11). *See Exhibit A - Retting Declaration*, ¶ 11. Thus, she does not enforce SOMB policies against CDOC as a member of the ARC, and cannot be sued simply because she is an ARC member.

Further, the SOMB periodically amends its Standards and Guidelines. § 16-11.7-103(4)(b) (ordering periodic revisions). But Nelson is mistaken when she presumes that Retting is on the Adult Standards Revision Committee (ASRC), which considers amendments. Retting indeed spoke to the committee's concerns at a meeting on January 17, 2025. (ECF No. 35 at 11-12). However, she simply was asked to answer questions for the ASRC during that meeting; she is not a member of the ASRC. *Retting Declaration* at ¶ 12. Thus, she cannot be said to "enforce" SOMB Standards and Guidelines through the ASRC.

DATED at Denver, Colorado this August 1, 2025.

PHILIP J. WEISER
Attorney General

*s/ Amy E. Adams*

AMY E. ADAMS*
EVAN P. BRENNAN*
Assistant Attorneys General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: 720-508-6000
E-Mail: amy.adams@coag.gov
evan.brennan@coag.gov
*Counsel of Record

**CERTIFICATE OF SERVICE**

This is to certify that I have duly served the within REPLY IN SUPPORT OF PARTIAL

MOTION TO DISMISS COMPLAINT (ECF NO. 22) upon all parties herein by e-filing with the

CM/ECF system maintained by the court on August 1, 2025, which will cause notification of such

filing to be sent to all counsel of record.

*Courtesy copy e-mailed to:*
Anthony DeCesaro, CDOC


*s/Jennifer Kaercher*