

Clinical
Programs

August 5, 2025

Amy Adams
Evan Brennan
Assistant Attorneys General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, Colorado 80203
Via email: amy.adams@coag.gov; evan.brennan@coag.gov

**EXHIBIT**

**3**

**Re*: Nelson v. Stancil, et al*., 24-cv-03588-PAB-TPO - Deficient Discovery Responses**

Dear Amy and Evan,

We write regarding Defendant Amanda Retting's Responses to Plaintiff's First set of Interrogatories and First Set of Requests for Production (Defendant Retting's First Set of Responses) and all Defendants' Responses to Plaintiff's Second Set of Interrogatories and Second Set of Requests for Production to Defendants Stancil, Long, and Retting (Defendants' Second Set of Responses). We have thoroughly reviewed the Defendants' responses, objections, and productions, and upon such review, we believe some of the Defendants' responses are deficient. Additionally, while we believe many of the Defendants' objections are unfounded, in an effort to reach compromise on areas of dispute, we have modified some requests to address the objections raised.

First, we address Defendant Retting's frequent assertion that she "does not speak for the SOMB as a whole" and that "she cannot certify that her personal knowledge" as to SOMB processes or procedures are entirely complete and correct. *See* **Defendant Retting's First Set of Responses** at 2-5; **Defendants' Second Set of Responses** at 2. But in this case, Defendant Retting *does* speak for SOMB. Defendant Retting has been sued as an official-capacity defendant of SOMB, and as Evan noted in his July 14 email, suits against official capacity defendants are recognized as suits against the state or entity, here SOMB. While a partial motion to dismiss regarding whether Defendant Retting is a proper SOMB official-capacity defendant is pending, discovery has not been stayed. Thus, where discovery requests seek information regarding SOMB, Defendant Retting must answer discovery requests as an official-capacity defendant for SOMB. This means she must respond to discovery requests by using all information within SOMB's possession, custody, or control. *See Tyler v. Suffolk County*, 256 F.R.D. 34, 38 (D. Mass. 2009) (defendant sued in official capacity was required to answer using all information within the government entity's possession, custody, or control). Please supplement Defendant Retting's responses to ensure that her responses are those of an official-capacity defendant of SOMB or confirm that her responses accurately reflect the responses of the entity.

We address each deficient discovery response in turn.

## INTERROGATORY NO. 1

**Please describe with specificity the degree of oversight and interaction the SOMB has over the CDOC, including the processes and procedures the SOMB utilizes to ensure its Standards and Guidelines are followed in the administration of the SOTMP.**

Defendant Retting objects to Interrogatory No. 1 on the basis that it is vague and overbroad. **Defendant Retting's First Set of Responses** at 2. Defendant Retting asserts that the words "oversight" and "interaction" are not clear in this context. *Id.* Courts expect responding parties to use the terms' ordinary meaning and exercise reason and common sense to determine what an interrogatory is asking. *Hertz v. Luzenac Am., Inc.,* No. CIVA04CV1961LTBCBS, 2006 WL 994431, at *12 (D. Colo. Apr. 13, 2006). Importantly, the responding party bears the burden of demonstrating how a request is vague or ambiguous. *Id.* Defendant Retting has not met this burden here.

Defendant Retting questions whether "all of the SOMB's Standards and Guidelines are relevant to the issues in this case." **Defendant Retting's First Set of Responses** at 2. But how the SOMB monitors CDOC's implementation of SOMB Standards and Guidelines is relevant to Ms. Nelson' claim because, to prevail on her claim, she must prove that the two entities substantially burden her sincerely held religious beliefs. How the two entities relate to one another with respect to the confession requirement is relevant to this.

Though we disagree that the words "oversight" and "interaction" are unclear in this context, we have amended Interrogatory No. 1 to provide Defendant Retting further clarity.

**Amended INTERROGATORY NO. 3:** *Please describe all ways in which SOMB ensures that CDOC, through its administration of SOTMP, follows SOMB Standards and Guidelines, including, without limitation: the processes and procedures the SOMB utilizes to ensure its Standards and Guidelines are followed in the administration of the SOTMP; how often anyone acting on behalf of the SOMB assesses whether CDOC, through its administration of SOTMP, follows SOMB Standards and Guidelines; and how such persons acting on behalf of SOMB determine that CDOC, through its administration of the SOTMP, is following all SOMB Standards and Guidelines.*

**INTERROGATORY NO. 3**

**Please describe how the SOMB considers, evaluates, and assesses whether an individual is eligible for an exemption from the treatment and participation requirements set forth by the Standards and Guidelines.**

Defendant Retting objects to Interrogatory No. 3 on the basis that it is vague because the SOMB Standards and Guidelines do not use the term "exemption" and Defendants purport to be unable to determine what Plaintiff refers to when she asks how SOMB determines someone is eligible for an exemption. **Defendant Retting's First Set of Responses** at 3. Though Plaintiff's First Set of Interrogatories included a definition for the term "exemption,"[1] she nonetheless amends Interrogatory No. 3 to assist Defendant Retting in providing a sufficient response.

**Amended INTERROGATORY NO. 3:** *Please describe how the SOMB considers, evaluates, and assesses whether an incarcerated person—on their own or through a treatment provider— is permitted to request a variance or any form of exemption from the treatment and participation requirements set forth by the Standards and Guidelines, including whether the fact that someone is not deemed an Eligible Individual[2] impacts whether they can be considered for a variance or any form of exemption.*

**INTERROGATORY NO. 4:**

**Once an Eligible Individual requests an exemption from participation requirements of the SOTMP, please describe with specificity how the SOMB evaluates the request and determines whether to grant the exemption, including the SOMB board members involved in that decision.**

Defendant Retting objects to Interrogatory No. 4 on the same basis as Interrogatory No. 3, repeating verbatim that "Defendants cannot determine exactly what Plaintiffs are referring to when they ask how the SOMB determines someone is eligible for an exemption." **Defendant Retting's First Set of Responses** at 3-4. Given that Interrogatory No. 4 does not request information about how SOMB determines someone is eligible for an exemption and rather asks the procedure once an Eligible Individual requests an exemption from participation requirements of the SOTMP, Plaintiff provides no further clarification here.

Defendant Retting responded to Interrogatory No. 4 without waiver of her objection. However, Defendant Retting's response is insufficient, as Plaintiff requested that Defendant Retting "describe with *specificity* how the SOMB evaluates the request and determines whether to

---

[1] *See* Plaintiff's First Set of Interrogatories and First Set of Requests for Production to Defendant Amanda Retting at 2.

[2] Please refer to the definition for "Eligible Individual" on page 3 of Plaintiff's First Set of Interrogatories and Requests for Production to Defendant Amanda Retting.

3

grant the exemption" (emphasis added). Fed. R. Civ. P. 30(b)(3) requires that interrogatories are answered "fully." Yet, in her response, Defendant Retting writes that "the ARC will review the request and investigate it," with no specificity regarding how the ARC conducts such a review or investigation. **Defendant Retting's First Set of Responses** at 4. Therefore, Plaintiff requests that Defendant Retting amend her response to fully answer Interrogatory No. 4 as written.

**INTERROGATORY NO. 5:**

**Please identify all SOMB board members and describe with specificity their respective roles.**

Defendant Retting objects to Interrogatory No. 5 on the basis that it is vague because Plaintiff did not describe what she means by "roles." **Defendant Retting's First Set of Responses** at 4. We disagree that the term "roles" is vague or requires further description. Parties answering interrogatory requests "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories." *Hertz*, No. CIVA04CV1961LTBCBS, at *12 (quoting *Stoldt v. Centurion Industries, Inc.,* No. 03-2634-CM-DJW, 2005 WL 375667, *2 (D. Kan. Feb. 3, 2005). Moreover, "[i]nterrogatories and requests for production should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request. . . ." Fed. R. Civ. P. 37(a) advisory committee note (1993).

Though Defendant Retting purports to have responded to Interrogatory No. 5 without waiving her objection, she failed to fairly construe the term "role." Her response is therefore insufficient, as it provides only a link to a public website containing a list of SOMB members and a sentence about Carl Blake's departure from the SOMB. **Defendant Retting's First Set of Responses** at 4.

Though we maintain that Plaintiff's Interrogatory No. 5 is not vague, in the interest of compromise, we have amended Interrogatory No. 5 to provide further guidance regarding the term "role."

**Amended INTERROGATORY NO. 5:** *Please identify all SOMB board members and describe with specificity their respective roles in the SOMB, including without limitation their respective obligations, responsibilities, and involvement in the SOMB, as well as what committees and sub-committees they are part of, how they contribute to those committees and sub-committees, and whether they have any position of authority vis a vis other members of those committees or sub-committees.*

4

**INTERROGATORY NO. 8:**

**Please describe with specificity all reasons why the SOTMP team and SOMB requires an incarcerated person to accept responsibility to participate in SOTMP, including why acceptance of responsibility is required for an individual to "Meet Criteria" for enrollment into the SOTMP.**

Defendants object to Interrogatory No. 8 on the basis that it is overbroad and unduly burdensome. **Defendants' Second Set of Responses** at 3. However, this naked and unsupported objection is insufficient. Defendants bear the burden to show that responding to a discovery request would be unduly burdensome, and that burden can be met only by providing "sufficient details or a compelling showing of undue burden to obviate the overwhelming preference for requiring that relevant discovery materials be exchanged." *Chevron Corp. v. Snaider*, 78 F. Supp. 3d 1327, 1341 (D. Colo. 2015) (cleaned up). Defendants have made no such showing nor provided any details; instead, they merely provided a response "to the best of Defendant Retting's knowledge."

Given Defendants' improper objections, Plaintiff asks Defendants to either (i) confirm that Defendant Retting's response provides *all* reasons the SOTMP and SOMB require an incarcerated person to accept responsibility to participate in SOTMP; or (ii) confirm that, after further reasonable inquiry,[3] Defendants will supplement their response to provide any additional reasons for the admission requirement.

**INTERROGATORY NO. 9:**

**Please describe all reasons why the SOTMP team has determined that Lacie Nelson "Does Not Meet Criteria" for SOTMP and explain with specificity all of the Defendants' purposes and reasons for requiring that Ms. Nelson accept responsibility to participate in SOTMP.**

Defendants also object to Interrogatory No. 9 on the basis that it is overbroad and unduly burdensome, **Defendants' Second Set of Responses** at 3, without providing any support for their assertion. *Chevron Corp*, 78 F. Supp. 3d at 1341.

Again, Plaintiff requests Defendants confirm that Defendant Retting's response provides all reasons why the SOTMP team has determined that Lacie Nelson "Does Not Meet Criteria" for SOTMP and explain with specificity all the Defendants' purposes and reasons for requiring that Ms. Nelson accept responsibility to participate in SOTMP.

---

[3] A party responding to an interrogatory must make a reasonable inquiry regarding the information sought. *Hamstein Cumberland Music Grp. v. Est. of Williams,* No. 06-CV-63-GKF-PJC, 2008 WL 2682697, at *6 (N.D. Okla. June 30, 2008) (A duty of reasonable inquiry is implicit in Fed. R. Civ. P. 33, but Fed. R. Civ. P. 26(g)'s certification requirement makes that duty explicit).

**INTERROGATORY NO. 10**

**Please describe how the SOTMP team both initially and continuously assesses and evaluates individual treatment needs and goals, including how the assessments and evaluations are implemented for individualized sex offense specific treatment in accordance with AR 700-19(G).**

Defendants object to Interrogatory No. 10 on the grounds that it is overbroad and unduly burdensome, without adequately explaining the basis for such an objection. **Defendants' Second Set of Responses** at 3. Defendants state that "complete information is not readily available." *Id.* But as explained above, Defendants are sued in their respective official capacities on behalf of CDOC (Stancil and Long) or CDOC and SOMB (Retting), and, thus, they must use all information available to their respective entities. *See Tyler*, 256 F.R.D. at 38. The assertion that neither entity has the information available to answer how the SOTMP team assesses an individual's treatment needs and goals is unreasonable.

Defendants also object on relevance grounds, arguing that they should not have to provide information related to male inmates because males pose a higher and different risk of re-offense. **Defendants' Second Set of Responses** at 3. Importantly, though, for discovery purposes, courts define relevance broadly, stating that information is relevant if it might reasonably lead to information that "bears on" any material fact or issue in the action. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Information regarding how the SOTMP team assesses individual treatment needs and goals for everyone, including both males and females, is relevant because information regarding the processes for males can reveal the nature of the CDOC's and SOMB's compelling government interest in substantially burdening Ms. Nelson's sincerely held religious belief as well as the potential availability of lesser restrictive alternatives.

Moreover, Defendants, without waiver of their objection, provided a deficient response when they addressed only how SOTMP staff assess when an individual can participate in SOTMP treatment and the role their admission of guilt, or lack thereof, plays in that determination, and provided no information about how SOTMP staff initially and continuously assess an individual's treatment needs and goals. Defendants failed to explain the use of clinical interviews, collateral information, psychological testing, and cognitive testing to assess an individual's needs and determine appropriate recommendations and individualized treatment goals, as described in AR 700-19(G) and specifically mentioned in Interrogatory No. 10. Therefore, Plaintiff requests that the Defendants amend their response to fully answer the interrogatory as written.

6

**REQUEST FOR PRODUCTION NO. 2**

**Please produce Ms. Nelson's Colorado Department of Corrections file, including but not limited to her medical file, mental-health file, chronological files, case management files, requests for administrative remedies, responses to requests for administrative remedies, custody and classification records, reentry tool documentation, prison intake tool documentation, actuarial risk assessment scale evaluations, admission data summaries, diagnostic narrative summaries, "kites," "kite" responses, any investigations of prison incidents involving Lacie Nelson, incident reports, parole records, documents from parole application interviews, Ms. Nelson's SOTMP documentation, and records of completed programming.**

Defendants object to Request for Production No. 2 first on the grounds that it is overbroad and unduly burdensome. **Defendants' Second Set of Responses** at 4. Yet, as is the case with their other objections, they provide no explanation for why the request is overbroad and unduly burdensome, except to say that the request has no timeframe and does not account for relevance. *Id.* All of Ms. Nelson's CDOC files—regardless of timeframe—are relevant to this matter, as evidence of Ms. Nelson's sincerely held religious belief may be found within those files. Additionally, evidence of Ms. Nelson's behavior in CDOC custody may refute arguments regarding Defendants' compelling government interest. Ms. Nelson's entire CDOC file, on its face, is relevant, and thus Defendants bear the burden of establishing that "the requested discovery does not fall within the scope of relevant evidence, or is of such marginal relevance that the potential harm of discovery is outweighed by the benefit." *Grays v. Auto Mart USA, LLC,* No. 18-CV-01761-MSK-NYW, 2019 WL 13167572, at *4 (D. Colo. Oct. 25, 2019) (citing *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D. Colo. 2004)).

Defendants state that "disclosure of some therapy documents would be contrary to the ethical obligations of CDOC's therapists." **Defendants' Second Set of Responses** at 4. It appears Defendants are trying to protect the privacy interest of the person requesting disclosure of the documents, namely, Plaintiff. To be clear, CDOC regularly and routinely releases such documents to an incarcerated person's attorney when the incarcerated person has signed a release authorizing such disclosure. Plaintiff would be happy to provide such a signed release to Defendants.

Defendants also claim official-information privilege. **Defendants' Second Set of Responses** at 4; **Defendants' Privilege Log Pertaining to Defendants' Response to Plaintiff's Second Set of Requests for Production** at 2-3 (2025.06.30 Privilege Log). According to Defendants' privilege log, they are specifically withholding Ms. Nelson's CARAS Evaluation, her Psychosexual evaluation,[4] and certain redacted information from Ms. Nelson's Chron Log, Incident Reports, and Offender File. *See* **2025.06.30 Privilege Log**. First, these descriptions do

---

[4] In their privilege log, Defendants cite to CDOC/Nelson_00668-00776 as part of their description for the Psychosexual evaluation. It appears Defendants may have been referring to CDOC/Nelson_00768-00776, the Adult Sex Offender Presentence Report.

7

not satisfy Defendants' duty under Fed. R. Civ. P. 25(b)(5) to "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5). Relatedly, Defendants fail to describe why these documents are supposedly covered by the official-information privilege. Instead, Defendants claim that the documents are confidential and not for public release, and that the release of the purportedly privileged documents or information would "implicate security concerns." **2025.06.30 Privilege Log** at 1-2. They provide no explanation for *how* release of such documents would implicate security concerns, nor do they provide enough information for a court to properly determine whether the privilege applies. *Horton v. U.S.*, 204 F.R.D. 670, 673 (D. Colo. 2002) (a party must provide "the precise reasons the materials are subject to the privilege asserted" and "[t]he information provided in the privilege log must be sufficient to enable the court to determine whether each element of the asserted privilege is satisfied" (internal citation omitted)).

Courts have found certain disclosures protected by the official-information privilege when the documents and information related to security considerations at prisons. *Melnick v. Lawrence*, No. 19-CV-01550-CMA-KLM, 2022 WL 20452219, at *2 (D. Colo. Dec. 12, 2022) (finding official information privilege appropriate when "disclosure of the ARs would jeopardize the safety and security of the CDOC staff and the public because the regulations reveal how community parole officers conduct field work activities, plan arrests, respond to fugitives, monitor telephone communications of offenders, and respond to electronic monitoring alerts.") Even then, courts must weigh "the interests of the party seeking discovery . . .against the interests of the government entity asserting the privilege. Id. (quoting *Ind v. Colorado Dep't of Corr.*, No. 09-CV-00537-WJM-KLM, 2011 WL 578731, at *3 (D. Colo. Feb. 9, 2011). Here, Defendants have provided no explanation of their interest in asserting the official-information privilege for any of the withheld documents or the redactions in Ms. Nelson's Chron Log, Incident Reports, and Offender File.

Therefore, Plaintiff requests that Defendants provide her entire CDOC File, as requested, and disclose the purportedly privileged documents or amend their privilege log to satisfy Fed. R. Civ. P. 26(b)(5).

For the above reasons, many of Defendants' discovery responses are deficient and objections unfounded. As such, Ms. Nelson requests the appropriate Defendants: respond to amended Interrogatories Nos. 1, 3, and 5; provide complete answers to unchanged Interrogatories No. 4 and 10; confirm that, despite their unfounded objections, their responses to Interrogatories 8 and 9 are complete; and provide all disclosures responsive to Request for Production No. 2 by August 18, 2025. Finally, in every response that Defendant Retting claims she does not speak for the entire SOMB (Interrogatory Nos. 1, 2, 3, 4, 5, 6, 8), please provide her amended responses based on all information in the SOMB's possession as is appropriate for an official-capacity defendant by August 18, 2025. If Defendants wish to confer telephonically regarding this matter, please let us know.

8

Sincerely,

Student Law Office
*s/ Miriam Kerler*
Miriam Kerler
Nicole B. Godfrey
Laura Rovner
University of Denver
Sturm College of Law
2255 E. Evans Ave.
Denver, CO 80208
Phone: 303.871.6140
Fax: 303.871.6847
Email: Miriam.kerler@du.edu
Nicole.godfrey@du.edu
Laura.rovner@du.edu

JOHNSON & KLEIN, PLLC

*s/ Gail K. Johnson*
Gail K. Johnson
5398 Manhattan Cir.
Boulder, CO 80303
Phone: 303.444.1885
Fax: 866.340.8286
Email: gjohnson@johnsonklein.com